## READ *v.* STATE.

Opinion delivered March 27, 1897.

INDICTMENT—REPUGNANCY.—Where an indictment for forgery of an order, in stating the purport of the order, alleges the name of the drawee to be Pendergrass, and the order set out *in hæc verba* in the indictment shows that the drawee's name is written therein "Pendergrapp," the repugnancy is not fatal where it is alleged that the order was forged with fraudulent intent to defraud said Pendergrass.

Error to Phillips Circuit Court.

H. N. HUTTON, Judge.

*Sanders & Fink* for appellant.

A plea of guilty to a bad indictment confesses no crime. 12 Ark. 170. The indictment is bad. Const.

art. 2, sec. 8; 29 Ark. 147. There is a repugnancy between the instrument set out and the averments as to its purport, which is fatal. 32 Ark. 609; 37 *id*. 116; 5 *id*. 349, 350; 31 S. W. Rep. 377; 36 *id*. 947; 32 *id*. 899; *ib*. 983; 34 *id*. 921. *Tenor* imports an exact copy. Roscoe, Ev. title "Forgery," 58 Ark. 242. The rule "*idem sonans*" has no application. The names are distinct and different in letters and sound. 5 Ark. 72; 6 *id*. 196; 3 Arch. Cr. Pl. & Pr. 536, *et seq*. The ·judgment should have been arrested. Sand. & H. Dig., sec. 2271–2273.

*E. B. Kinsworthy*, Attorney General, for appellee.

When the instrument is set out, it is not necessary to allege that the party intended to defraud any particular person. Sand. &. H. Dig., sec. 1593; 21 S. W. Rep. 729; Bish. St. Cr. sec. 335; 1 Wharton, Cr. Law, sec. 740; 2 Bish. Cr. Proc. sec. 416; 97 Mass. 570; 9 Yerg. 392; 68 Mo. 286. Hence a variance between the name of the party addressed in the instrument forged is not fatal. 1 Johns. (N. Y.) 320. Evidence could have been introduced to show that Pendergrapp was meant for Pendergrass. 26 S. W. Rep. 500; *ib*. 354; 2 Pick. (Mass.) 47; 59 N. H. 36; 92 N. C. 768; 64 Wis. 432.

BATTLE, J. On the 29th day of October, 1895, Jim Read was indicted in the Phillips circuit court for forgery, in the following words and figures: "The grand jury of Phillips county, in the name and by the authority of the state of Arkansas, accuse John Read of the crime of forgery committed as follows, to wit: The said John Read, in the county aforesaid, on the 26th day of October, 1895, then and there, did unlawfully, wilfully and feloniously make, forge and counterfeit a certain paper writing, purporting to be an order from one Mose Dortch, to one Lee Pendergrass, payable to one Fred Brown, for the sum of fifteen dollars, which said false and forged writing is of the tenor, purport and effect

following, to wit: 'October 26, 1895. Mr. Pendergrapp, please send me $15 by Fred Brown, and I will ship some cotton down next week, and pay you. Your truly friend. Mose Dortch.' And the false and fraudulent making and counterfeiting of the paper writing aforesaid, by the said John Read, was done with the fraudulent and felonious intent then and there to cheat and defraud said Lee Pendergrass, and to obtain from him, the said Lee Pendergrass, the possession of the money and property of him, the said Lee Pendergrass, and to cause him to be injured in his estate, against the peace and dignity of the state of Arkansas.

"II. And the grand jury aforesaid, in the name and by the authority aforesaid, accuse John Read of uttering a forged instrument committed as follows, to wit: The said John Read on the 26th day of October, 1895, in the county of Phillips aforesaid, then and there, unlawfully, wilfully and feloniously did utter, publish, and put off as true to one Lee Pendergrass a certain false, forged and counterfeit paper writing, purporting to be an order from one Mose Dortch to one Lee Pendergrass, payable to one Fred Brown, for the sum of fifteen dollars, which said false and forged writing is of the tenor, purport and effect following, to wit: 'October 26, 1895. Mr. Pendergrapp, please send me $15 by Fred Brown, and I will ship some cotton down next week, and pay you. Your truly friend, Mose Dortch.' He, the said John Read, then and there, well knowing the same to be false and forged and counterfeit, with intent fraudulently to obtain from said Lee Pendergrass possession of his money and property, and to cause him to be injured in his estate, against the peace and dignity of the state of Arkansas. John T. Hicks, Pros. Atty."

The court, having ascertained that the name of the defendant was Jim Reed, ordered that subsequent proceedings in the case be against him in that name. In

that name he pleaded guilty to the indictment, and the court assessed his punishment at two years in the penitentiary, and rendered judgment against him accordingly.

He brings the record of his indictment and conviction, by writ of error, to this court, and asks that the judgment against him be reversed, and says the indictment is fatally defective, and does not sustain the judgment, because there is a repugnancy between the instrument set out in the indictment according to its tenor and the averment as to its purport, in this: it is averred that the order forged purported to be directed to Lee Pendergrass, and as set out according to its tenor it was directed to "Mr. Pendergrapp." To sustain his contention he cited *McClellan* v. *State*, 32 Ark. 609.

In the case cited, this court held that a repugnancy between an instrument set out in an indictment for forgery and the averment as to its purport is fatal to the indictment. This decision was based upon the law as it existed at the time of the enactment of our "Code of Criminal Practice in Criminal Cases." The court seems to have overlooked or failed to consider the changes made by the code.

Under the code no particular form of indictment is required to be followed. The constitution of the state says it shall conclude: "Against the peace and dignity of the state of Arkansas." Further than this no particular form of words is required to be used. The code says: "The indictment *must contain*: 'First. The title of the prosecution, specifying the name of the court in which the indictment is presented and the names of the parties. Second. A statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended.'" That it must be *direct* and *certain* as regards: "First. The party charged. Second. The offense charged. Third. The

county in which the offense was committed. Fourth. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense." That it is *sufficient* if it can be understood therefrom : "First. That it was found by a grand jury of a county impaneled in a court having authority to receive it, though the name of the court is not accurately stated. Second. That the offense was committed within the jurisdiction of the court, and at some time prior to the time of finding the indictment. Third. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case." And that "no indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits." Sand. & H. Dig., secs. 2090, 2074, 2076.

If it be conceded that there is a repugnancy in the indictment in this case as claimed, it cannot affect the judgment under these statutes. To prevent such an effect, they were enacted. As said in *Myers* v. *State*, 101 Ind. 379, "the purpose of the statutes was and is to free the criminal practice from some of the technical rules of the common law which have outlived their usefulness, and which ought to have passed away with the necessities that brought them into being." Their purpose is plainly evinced in the statute which declares: "No indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect which does not *tend to the prejudice of the substantial rights of the defendant on the merits.*"

In the case before us the instrument forged is set out *in hæc verba*, and it is alleged that the forgery thereof "was done with the fraudulent and felonious intent then and there to cheat and defraud said Lee

Pendergrass," etc. The allegation that the instrument purported "to be an order from one Mose Dortch to one Lee Pendergrass" is substantially saying and clearly means that the "Mr. Pendergrapp" mentioned in the order is Lee Pendergrass; otherwise, the forgery could not have been done with the intent to cheat and defraud Lee Pendergrass.

In the state of Indiana they had statutes which provided that an "indictment is sufficient if it can be understood therefrom: * * * 'Fifth. That the offense charged is stated with such a degree of certainty that the court may pronounce judgment, upon a conviction, according to the right of the case,'" and that "no indictment * * * * shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment, or other proceeding be stayed, arrested, or in any manner affected, for any of the following defects: * * * * Sixth. For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged * * * Tenth. For any other defect or imperfection which does not tend to the predjudice of the substantial rights of the defendant upon the merits." In *Myers* v. *State*, 101 Ind. 379, the defendant was accused of forging and counterfeiting "a certain order, purporting to have been made and executed by one Vincent T. West, for the payment of property, goods and chattels to him, the said George Myers, which said false, forged and counterfeit order is to the following tenor, to wit: 'Mr. Roberts, please let Mr. Myers have $3.00 of groceries. Dr. West.'" and it was alleged "that the Dr. West mentioned in the said order was intended to and did mean Vincent T. West; that the Mr. Roberts mentioned in said order was intended to and did mean William F. Roberts; that the Mr. Myers mentioned in said order was intended to and did mean George Myers, the defendant; that the

said George Myers forged said order as aforesaid, with intent then and there and thereby, falsely, feloniously, and fraudulently, to prejudice, damage and defraud the said Vincent T. West," etc. In that case, as in this, it was contended that there was a repugnancy between the instrument set out and the averment as to its purport, but the court held that there was no defect in that respect that could "by any possibility affect the substantial rights" of the defendant upon the merits; and that the indictment was sufficient under the Indiana statutes mentioned.

In *State* v. *Bibb*, 68 Mo. 286, the defendant was accused of forging a receipt, purporting to be the receipt of Charles W. Jeffries. The receipt was set out *in hæc verba*, and appeared to have been signed by C. W. Jeffries. The court said: "There is no question of variance, as there might have been if the receipt had not been fully set out in the indictment. The allegation that it purported to be the receipt of Charles W. Jeffries is substantially an allegation that C. W. and Charles W. Jeffries were the same person."

These cases sustain the view we take of the law in this case. We hold that the indictment in question is not insufficient, under the statutes of this state, on account of repugnancy, and that if there be a defect in it in this respect, it could not have affected the substantial rights of the defendant upon the merits.

*McClellan* v. *State*, *supra*, in so far as it conflicts with this opinion, is overruled.

Judgment affirmed.